**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON**

| | | |
|---|---|---|
| CLIFTON B. MAYS, | ) | CASE NO. 1:20-CV-01402-JRK |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES R. KNEPP, II |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| WARDEN KENNETH BLACK, [1] | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |

**I. Introduction**

Petitioner, Clifton B. Mays, seeks a writ of habeas corpus under 28 U.S.C. § 2254. Mays is an Ohio prisoner who is currently serving a twenty-four-year sentence for felonious assault, kidnapping, domestic violence, endangering children, aggravated menacing, and having weapons under disability. Mays asserts four grounds for relief. (ECF No. 1). Respondent, Warden Kenneth Black, filed a return of writ on July 1, 2021 (ECF No. 49) and Mays filed a traverse on July 23, 2021 (ECF No. 51).[2]

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mays' petition and other case-dispositive motions. Mays's grounds for relief are all procedurally defaulted; thus, I recommend that the Court deny his motion for an evidentiary

---

1 The Court has updated the caption in this matter to reflect the current warden of the facility in which Petitioner is incarcerated.

2 Much as he did throughout his state court proceedings, Mays filed a litany of motions, letters, and writs following the filing of his petition. As none of these filings impact the undersigned's analysis, they are not recounted in detail.

hearing, deny his petition in its entirety, and not grant him a certificate of appealability. Additionally, Mays's motion for the appointment of counsel is denied.

## II. Relevant Factual Background

Ordinarily, the facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), cert. denied, 527 U.S. 1040 (1999). However, Mays never successfully completed a direct appeal from his convictions. Accordingly, the undersigned has summarized the factual background of Mays' conviction through a review of his trial transcript. [3]

Mays's convictions stem from a weekend during which he repeatedly assaulted the victim, a woman that lived with Mays along with her four children including an infant to whom Mays was the father. The victim and Mays were in a romantic relationship for roughly seven years. (ECF No. 49-5 at 5). In March of 2018, the relationship began to deteriorate, and the victim made plans to move out of the shared home by April 30, 2018. (ECF No. 49-5 at 6-7). On a Saturday near March 9, 2018, Mays returned to the home and went through the victim's phone and Facebook account. (ECF No. 49-5 at 7-8). Mays, apparently unhappy with the content of the messages, began to verbally abuse the victim. (ECF No. 49-5 at 8). While the verbal abuse continued, Mays transitioned to physical abuse the next day. He began by shoving the victim into a wall and purposely stomping on her foot. (ECF No. 49-5 at 13). While the victim was nursing the infant, Mays stood over her and began punching her. (ECF No. 49-5 at 14). The victim curled herself

---

[3] Based upon the Court's resolution of this petition, any disagreement over the underlying facts is immaterial.

around the infant for protection, and Mays proceeded to punch and kick her in the shoulder, arm, thighs, butt, and ribs. (ECF No. 49-5 at 15).

During the initial physical assault, Mays retrieved a black revolver. (ECF No. 49-5 at 16). Mays then loaded one bullet into the firearm and told the victim, "I'm going to ask you some questions and if you don't answer or I don't like it, I'm going to pull the trigger." (ECF No. 49-5 at 16-17). Mays then asked the victim whether she had cheated on him (ECF No. 49-5 at 17). The victim denied any infidelity, and Mays followed through with his threat and pulled the trigger. (ECF No. 49-5 at 17). Mays repeated another variation of the same question, the victim responded in the same manner, and Mays again pulled the trigger of the revolver with the gun pressed against the victim's temple. (ECF No. 49-5 at 17-18). Unsatisfied with the victim's level of fear, Mays informed her, "I'm about to put the fear of God in you, bitch." (ECF No. 49-5 at 18). Mays then retrieved a shotgun and placed one bullet in it. (ECF No. 49-5 at 18). Mays then forced the barrel of the shotgun into the victim's mouth and informed her to suck on the barrel. (ECF No. 49-5 at 19). Eventually, Mays fell asleep and the victim retreated to the room where her other three children were asleep and attempted to sleep herself. (ECF No. 49-5 at 21-22).

Mays woke the victim early the next morning and instructed her to go downstairs to a different living area. (ECF No. 49-5 at 23). Mays then closed and locked the door behind the pair. (ECF No. 49-5 at 23). At that point, Mays resumed his physical assault by punching the victim. (ECF No. 49-5 at 23). When the victim asked permission to leave, Mays responded, "bitch, you not going nowhere." (ECF No. 49-5 at 23). This assault went on for several hours and included Mays choking the victim and knocking her to the floor on numerous occasions. (ECF No. 49-5 at 24-25). Mays then forced the victim to leave the house and drove her to numerous areas. (ECF No. 49-5 at 26-27). During this drive, Mays highlighted all the places that he could leave the

3

victim's body. (ECF No. 49-5 at 27). Mays then returned home with the victim and acted as though nothing had occurred. (ECF No. 49-5 at 28). A short while later, Mays agreed to take the victim to the hospital with all of the children. (ECF No. 49-5 at 30). The victim, with the assistance of hospital staff, took a taxi from the hospital directly to a bus station and left the area.

As a result of the above, Mays was indicted on April 3, 2018 for attempted murder, felonious assault, kidnapping, domestic violence, endangering children, aggravated menacing, and having weapons under disability. (ECF No. 49-1, PageID #: 763-771). Following a jury trial, Mays was convicted of felonious assault, kidnapping, domestic violence, endangering children, aggravated menacing, and having weapons while under disability. (ECF No. 49-1, PageID #: 898). Mays received an aggregate sentence of twenty-four years in prison for his convictions. (ECF No. 49-1, PageID #: 901).

## III. Relevant Procedural History

Much like his filing history in this matter, it would be difficult to recount all of the numerous filings that Mays submitted throughout his state court proceedings. Instead, this Court focuses on those directly relevant to the resolution of this petition.

Following his conviction, Mays, through counsel, filed a direct appeal with the Eighth District Court of Appeals. (ECF. No. 49-1, PageID #: 903). After a brief was filed by counsel in the appeal, Mays sought to remove his counsel and proceed *pro se*. (ECF. No. 49-1, PageID # 978-979). In his *pro se* motion, Mays noted that he "will collaterally move to seek to 'stay' all appeal proceedings immediately (with a time extension) to re-tool his appeal and submit all of his silenced claims." (ECF. No. 49-1, PageID #: 980-981). The Eighth District granted Mays' request to proceed without counsel and ordered his brief to be filed by July 15, 2019. (ECF. No. 49-1, PageID #: 987). Mays did not file a brief, and the appeal was dismissed pursuant to Ohio App. R. 18(C)

4

on July 31, 2019. (ECF. No. 49-1, PageID #: 989).  Mays did not appeal this dismissal to the Ohio Supreme Court.

On November 21, 2018, Mays filed a motion for a new trial. (ECF No. 49-1, PageID #: 1122). The motion and its subsequent supplement filed on March 1, 2019 (ECF No. 49-1, PageID #: 1129) were denied on November 25, 2019 without opinion. (ECF No. 49-1, PageID #: 1230). Mays did not appeal from the denial.[4]

## IV. Federal Habeas Corpus Petition

On July 5, 2018, Mays petitioned *pro se* that this Court issue a writ of habeas corpus. (ECF No. 1). Mays asserted the following grounds for relief:

> GROUND ONE: 90 days speedy trial rights were violated, judicial misconduct, prosecutorial misconduct, police misconduct, witness misconduct.
>
> GROUND TWO: Ineffective assistance of trial counsel, Michael J. Cheselka, conspiracy with the prosecutors, the police, and the judge.
>
> GROUND THREE: The Court failed to send out my subpoenas when I was representing myself according Criminal Rule 44, judicial misconduct.
>
> GROUND FOUR: A forged fraudulent complaint by Detective Thelemor Powell that lacked probable cause, essential facts, supporting affidavit, and judicial review.

(ECF No. 1).  Respondent filed the return of the writ on July 1, 2021 (ECF No. 49), and Mays filed his traverse on July 23, 2021 (ECF. No. 51).

## V. Legal Standards

### A. Jurisdiction

---

4 Mays filed a multitude of post-dismissal motions in his original direct appeal, a petition for a writ of procedendo, a petition for a writ of prohibition, and a plethora of post-conviction motions that had no basis in law. As none of these filings impact the disposition of this matter, they are not recounted in detail.

Title 28, United States Code Section 2254(a) authorizes district courts to entertain an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d). The Court of Common Pleas of Cuyahoga County sentenced Mays, and Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mays's § 2254 petition.

### B. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id*. (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under

6

the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998)

### C. Exhaustion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Mays's petition for writ of habeas corpus. *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that the AEDPA governs petitions filed after April 24, 1996); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009). Under the AEDPA, state prisoners must either exhaust all possible state remedies or have no remaining state remedies before a federal court can review a petition for writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509, 515–19 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) ("The highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims.").

### D. Procedural Default

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v.*

*Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law. *Id*. at 732-33. To be adequate, a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied. *Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' ..., it is satisfied 'if it is clear that [the

habeas petitioner's] claims are now procedurally barred under [state] law' ...." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

### E. Standard of Review

The AEDPA provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id*.

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision

only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state-court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's … determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet… because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state courts decision conflicts with this Court's precedents" and "goes no further." *Id*. Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*.

## VI. Discussion

The undersigned recommends that the Court find that the entirety of Mays' petition has been procedurally defaulted. The failure of a state inmate to appeal a claim to the Supreme Court of Ohio constitutes a procedural default. *See Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002). Mays not only failed to appeal *any* aspect of his case to the Ohio Supreme Court, but he also never completed a direct appeal of his convictions or the denial of his post-appeal motion for new trial. As a result, Mays has never "fairly presented" any of his claims to the state court through the ordinary appellate procedures. His issues, therefore, cannot be considered in this habeas proceeding. *Baston,* 282 F. Supp. 2d at 661.

Mays's initial attempt at a direct appeal was dismissed pursuant to Ohio App. R. 18(c). "If a state has a procedural rule that prevented the state courts from hearing the merits of a habeas petitioner's claim, that claim is procedurally defaulted when: (1) the petitioner failed to comply with the rule; (2) the state actually enforced the rule against the petitioner; and (3) the rule is an 'adequate and independent' state ground foreclosing review of a federal constitutional claim. *James v. Sheldon*, No. 1:17-CV-2095, 2021 WL 405522, at *4 (N.D. Ohio Feb. 5, 2021) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Taylor v. McKee*, 649 F.3d 446, 450 (6th Cir. 2011)).

Mays failed to comply with the filing requirements of Ohio App. R. 18(c), which allows the court of appeals to dismiss an appeal when the appellant fails to file a brief in the time allowed by the rule or as extended by the court. Here, the court of appeals allowed Mays until July 19, 2019 to file his pro se brief after granting his motion to dismiss his appellate counsel and proceed pro se. Mays failed to file his brief by July 19, 2019, thus satisfying the first factor of the *Maupin* test. The second *Maupin* factor was satisfied when the state appellate court dismissed Mays's appeal for failing to file his brief by July 19, 2019. (ECF No. 7-1, PageID #: 200-201). Finally, Mays's

12

failure to comply with the filing requirements of Ohio App. R. 18(c) constitutes an adequate and independent state ground on which Ohio can rely to foreclose review of a federal constitutional claim. *Hall v. Clipper*, No. 1:10-CV-1340, 2011 WL 4808179, at *14 (N.D. Ohio Sept. 7, 2011), *report and recommendation adopted*, No. 1:10-CV-1340, 2011 WL 4827002 (N.D. Ohio Oct. 11, 2011) Accordingly, each of Mays's grounds is procedurally defaulted. *See Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").[5]

Mays cannot establish "cause" for his procedural default since the dismissal of his appeal was due to his own failure to file a *pro se* brief after requesting to proceed in such a fashion. *See Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *14 (N.D. Ohio Feb. 12, 2007) (citing *Coleman*, 501 U.S. at 754) (holding that cause under the cause and prejudice test must be something external to the petitioner that cannot fairly be attributed to him).

Additionally, Mays's default cannot be excused under the "fundamental miscarriage of justice" exception since Mays has not come forward with new, reliable evidence. *See Coleman,* 501 U.S. at 749–50). "In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 496). "The 'fundamental

---

5 The Court also notes that Mays failed to appeal the appellate court's dismissal to the Ohio Supreme Court.

miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' " *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Mays claims to have discovered exculpatory evidence from the hospital videotape that proved the whole case against him was a lie and discovered records that proved his Greyhound bus tickets were fake. However, Mays himself acknowledges that this evidence was in fact available as of the time of trial. (*See* ECF No.49-1, PageID # 1128). Mays has failed to provide any new evidence demonstrating his "factual innocence."

This Court recommends dismissing Mays's petition as each claim has been procedurally defaulted.

## VII.    Motion for the Appointment of Counsel (ECF No. 51-17)

Petitioner requests assistance in obtaining federal counsel pursuant to "federal rule 60(B)-6". (ECF No. 51-17).[6] Petitioner does not assert that he needs assistance with the instant petition for habeas relief. Instead, Petitioner urges the court to appoint counsel in order to conduct discovery pertaining to this trial and conviction and review the filings in the state court matter. (*See* ECF No. 51-17).

---

6 Federal R. Civ. P. 60(b)(6) does not address the appointment of counsel for habeas claims, but rather, allows a motion for relief from a final judgment, order, or proceeding.

A district court has the discretion to appoint counsel in a civil proceeding. *See Dudley El v. Michigan Dep't of Corr.*, No. 17-2288, 2018 WL 5310761, at *3 (6th Cir. May 23, 2018); 28 U.S.C. § 1915(e)(1). It "is not a constitutional right and is justified only by exceptional circumstances." *Id.* (citations and internal quotation marks omitted). "When determining whether exceptional circumstances exist, courts generally examine the complexity of the factual and legal issues involved and the plaintiff's ability to represent himself. *Id.* (citations and internal quotation marks omitted). "Courts should not appoint counsel when the claims are frivolous or when the chances of success are extremely slim." *Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (citation and quotation marks omitted).

Petitioner's grounds for relief are each procedurally defaulted. The Court has carefully reviewed the relevant portions of the record and—seeing nothing exceptional about Petitioner's circumstances—finds nothing to justify appointment of counsel. Based on the filings, the Court perceives that Petitioner is capable of representing himself and pursuing, via appropriate mechanisms, relief under the law. The case is not particularly complex and Petitioner's submissions to the Court express awareness of relevant legal concepts and demonstrate that he is capable of invoking the judicial process and making reasoned arguments to support his claims.

Accordingly, the Court denies Petitioner's request for the appointment of counsel to represent him in this habeas petition.

## VIII.   Motion for Evidentiary Hearing

Mays also moved for an evidentiary hearing. When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Under

15

the AEDPA, evidentiary hearings are not mandatory in habeas cases. *See Vroman v. Brigano*, 346 F.3d 598, 606 (6th Cir. 2003). An evidentiary hearing is not required where the record is complete or if the petition raises only legal claims that can be resolved without the taking of additional evidence. *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *United States v. Sanders*, 3 F. Supp. 2d 554, 560 (M.D. Pa. 1998).

If the Court accepts the foregoing recommendation, the motion for an evidentiary hearing should be denied because each of Mays's claims is procedurally defaulted.

## IX.      Certificate of Appealability

### A.      Legal Standard

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

### B.      Analysis

Each of Mays's grounds for relief is procedurally defaulted. If the Court accepts the foregoing recommendation, then Mays has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, I recommend that the Court not issue a certificate of appealability.

16

## VIII. Recommendation

Petitioner Mays has presented only procedurally defaulted claims. Thus, I recommend that the Court DENY Mays's petition, along with his motion for an evidentiary hearing, and not grant him a certificate of appealability.

DATED: January 18, 2022

*s/ Carmen E Henderson*
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).